**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **BOBBY O. MATTHEWS, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-2869** |
| **INTERNATIONAL HOUSE OF PANCAKES, INC., ET AL.** | **SECTION: "4"** |

**ORDER AND REASONS**

Before the Court is a **Motion to Dismiss, or Alternatively for Summary Judgment (R. Doc. 62)** and a **Motion for Judgment on the Pleadings or Alternatively for Summary Judgment or Partial Summary Judgment ( R. Doc. 76)** filed by Defendants, International House of Pancakes, Inc., IHOP Franchising, LLC, IHOP Realty Corp., and IHOP Properties, LLC (collectively referred to as "the IHOP Entities"). The Plaintiffs, Bobby O. Matthews ("Matthews") and Barbara McGee ("McGee") did not file an Opposition to the first motion. They did, however, file an Opposition to the second motion which addresses slightly different issues and one overlapping issue. The first motion was set for hearing on August 22, 2008 and the second was set for hearing on December 10, 2008. This matter is before the undersigned United States Magistrate Judge upon consent of the parties pursuant to **Title 28 U.S.C. § 636(c)**.[1]

I. **Background**

The Plaintiffs, Matthews and McGee, filed the subject action on May 14, 2007, alleging

---

[1] R. Doc. 60.

racial discrimination, sexual discrimination, and sexual harassment. (R. Doc. 1). In their Complaint, they alleged that the IHOP Entities owned, operated, or franchised an IHOP Restaurant located at 325 North Highway 190, Covington, Louisiana. (R. Doc. 1). According to the Plaintiffs, the IHOP Entities purportedly employed Ahab Mohamed ("Mohamed") as the manager for the Covington restaurant. (R. Doc. 1). The Plaintiffs contend that Mohamed engaged in: (1) a pattern and practice of racial discrimination against African-Americans; (2) gender discrimination against females; and (3) sexual harassment of females. (R. Doc. 1).

### A.      Racial Discrimination

The Plaintiffs maintain that Mohamed racially discriminated against African-Americans in the workplace. They contend that Mohamed destroyed employment applications filed by African Americans because of their race; frequently referred to African-American employees as "nigger;" and used racially discriminatory language against Matthews. (R. Doc. 1). Specifically, they aver that Mohamed purportedly called Matthews a "monkey" and told him that African-Americans are "like flies . . . always in some shit." (R. Doc. 1). The Plaintiffs also claim that Mohamed told Matthews that African-Americans "all need to go back where you came from." (R. Doc. 1). Mohamed also allegedly told Matthews that chemicals in Bogalusa, Louisiana must affect African-Americans, because "you all act the same." (R. Doc. 1).

After Matthews complained to Mohamed, Mohamed allegedly reduced Matthews's work hours, assigned him to undesirable work, and finally terminated him. (R. Doc. 1). The Plaintiffs assert that Mohamed retaliated against Matthews in a manner similar to his treatment of other African-American employees who complained about his conduct. (R. Doc. 1).

### B.      Sexual Harassment

The Plaintiffs also allege that Mohamed created a hostile work environment, because he acted inappropriately toward the female employees at the IHOP Restaurant. (R. Doc. 1). Mohamed purportedly groped, touched, and caressed female employees in their pubic areas, buttocks, and breasts and propositioned them for sex, offering or denying job benefits and advantages contingent upon sexual favors. (R. Doc. 1). Specifically, the Plaintiffs allege that Mohamed frequently touched McGee offensively and in an unwanted manner and used derogatory and degrading language towards her regarding females. (R. Doc. 1).

C.      **Section 1981 and Section 1985**

Plaintiffs further contend that the IHOP Entities, through their agents and employees, impaired their rights and the rights of similarly situated African American Citizens to make and enforce contracts based upon race. (R. Doc. 1). They further contend that they are entitled to back pay, full reinstatement of employment, seniority and benefits, or alternatively, front pay and compensatory damages. The Plaintiffs do not, however, specifically allege how the IHOP Entities impaired their rights to enforce any contract.

Additionally, the Plaintiffs allege that the IHOP Entities conspired to impair their rights, as well as the rights of other similarly situated African American citizens, to make and enforce contracts of employment based upon race. (R. Doc. 1). Again, the Plaintiffs fail to specify which acts of the IHOP Entities constitute the conspiracy and how such acts have impacted their rights to enforce any contract, including one of employment.

The IHOP Entities filed the subject motion, seeking dismissal of the Plaintiffs' Complaint. They contend that the Complaint fails to state a clam upon which relief may be granted and, alternatively, urge the Court to grant their motion for summary judgment, because there are no

genuine issues of material facts to be tried. The IHOP Entities argue that they are entitled to summary dismissal of the Plaintiffs' claims, because: (1) J& K, Inc. ("J&K") owns the business operations of the IHOP Restaurant in Covington, Louisiana; (2) J&K is solely responsible for the day-to-day operations of the Covington Restaurant; (3) J&K is solely responsible for all personnel decisions of the Covington restaurant, including the firing, hiring, and discipline of its employees; (4) the IHOP Entities did not direct the Plaintiffs' work schedules or performance; and (5) the Plaintiffs failed to name J&K as a party in this lawsuit.

The Plaintiffs did not file an Opposition to the first motion. Instead, the Plaintiffs filed a Motion to Continue Defendant's Motion to Dismiss Pursuant to Rule 56(f). (R. Doc. 63). The Court granted the Motion To Continue, and the Plaintiffs were given additional time to respond to the Motion To Dismiss. The hearing was reset for August 22, 2008. (R. Doc. 72). However, despite the extension, the Plaintiffs did not file an Opposition.

Several months later, the IHOP Entities filed a second Motion for Judgment on the Pleadings or Alternatively for Summary Judgment or Partial Summary Judgment. (R. Doc. 76). This motion seeks dismissal of the Plaintiff's claims on additional grounds not detailed in the earlier filed motion. (*See generally* R. Doc. 76). Specifically, the IHOP Entities argue that: (1) the Plaintiffs' § 1985 claims are barred by the applicable one-year prescription period; (2) Matthews's claim of race discrimination under § 2000e is barred, because he failed to file it within 300 days of the termination of his employment; (3) Matthew's § 1981 claim is based upon insufficient evidence of discriminatory conduct; (4) McGee's race discrimination claim under § 1981 and § 2000e is barred, because the Complaint does not allege race discrimination for McGee, and because the claim purportedly was not filed within 90 days of McGee's receipt of notice of her right to sue; and (5)

4

McGee's sex discrimination claim under § 2000e is barred, as it falls outside the scope of her Equal Employment Opportunities Commission ("EEOC") Charge.  (R. Doc. 76-2, pp. 2-3).

## II.     Standard of Review

### A.      Motion To Dismiss

Federal Rule of Civil Procedure ("Rule") 12(b)(6) provides that, in response "to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim" the pleader may raise by motion the defense of "failure to state a claim upon which relief may be granted." Fed.R.Civ.P. 12(b)(6).  In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.' " *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464 (5th Cir.2004)(quoting *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999).

"[T]he plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face" in order to survive a Rule 12(b)(6) motion to dismiss. *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1974 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (quotation marks, citations, and footnote omitted).[2]  Pursuant to Rule 12(b)(6), the motion to dismiss shall be treated as a motion for summary judgment.

---

[2] Judge Duval noted in *In re Katrina Canal Breaches Consol. Litigation*, No. 05-4182, 2008 WL 4449970 (E.D. La. Sept. 29, 2008) that the Supreme Court abrogated the often cited "no set of facts" language in *Conley,* commenting that the case has been frequently mis-characterized as setting forth a minimum pleading standard when it was simply "describ[ing] the breadth of opportunity to prove what an adequate complaint claims." *Twombly,* 127 S.Ct. at 1968. In other words, the *Twombly* court reads *Conley* as standing for the proposition that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* (citing *Sanjuan v. American Bd. of Psychiatry and Neurology,* 40 F.3d 247, 251 (7th Cir.1994)(once a claim for relief has been stated, a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint"). Thus, rejecting the *Conley* "no set of facts" test, the *Twombly* court employs a plausibility standard for scrutinizing the sufficiency of pleadings in the context of Rule 12(b)(6) motion.

### B.      Summary Judgment

The Federal Rules provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).   The moving  party bears the initial responsibility of informing the district court of the basis for its motion, and identifying the portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *Myers v. Foti*, No. 00-388, 2003 WL 161414, at *1 (E.D. La. Jan. 21, 2003) (Porteous, J.) (citing *Stults v. Conoco, Inc.,* 76 F.3d 651, 655-56 (5th Cir.1996) (internal citations omitted).

Where the movant has carried its burden under Rule 56(c), the opponent must do more than simply demonstrate the existence of some metaphysical doubt as to the material facts.  *Id.* "[M]ere allegations or denials" are insufficient to defeat a well-supported motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)).  Rather, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  *Myers,* 2003 WL 161414, at  *1 (quoting *Matsushita,* 475 U.S. at 587; *Tubacex, Inc. v. M/V RISAN,* 45 F.3d 951, 954 (5th Cir. 1995)).

Accordingly, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."  *Id.* (quoting *Matsushita Elec. Indus. Co.,* 475 U.S. at 588).  However, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *See id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

6

**C.   Judgment on the Pleadings**

Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c).  "A motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Bouttee v. Era Helicopters, LLC*, 244 F.R.D. 360, 364 (W.D. La. 2007) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir.1990) (internal citations omitted).

In determining a motion for judgment on the pleadings, the Court must look only to the pleadings, construing such pleadings liberally and accepting all allegations contained therein as true. *Id.* (citing *Brittan Commc'ns Int'l Corp. v. Southwestern Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002); *St. Paul Fire & Marine Ins. Co. v. Convalescent Serv., Inc.*, 193 F.3d 340, 342 (5th Cir. 1999)).  A motion for judgment on the pleadings should only granted where it appears certain that the party opposing the motion cannot prove any set of facts that would entitle it to relief.  *See Id.* at 364-65 (citing *Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 450 n. 2 (5th Cir.2005)). Judgment on the pleadings is appropriate where material facts are not disputed and the only issues are questions of law.  *Id.* at 365 (citing *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887 (5th Cir.1998)).  Pursuant to Rule 12(c), "any party" may move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." *Id.* (citing Fed.R.Civ.P. 12(c).)

In the Fifth Circuit, the same standard applies for a motion to dismiss under Rule 12(c) as that which applies for a motion to dismiss under Rule 12(b)(6). *Id.*  (citing *Great Plains Trust Co.*

*v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n. 8 (5th Cir.2002); *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir.1999) (relying upon cases that provide the standard for a Rule 12(b)(6) motion in stating the applicable standard for a Rule 12(c) motion); *St. Paul Ins. Co. of Bellaire, Tex. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir.1991)).  However, "[a] district court may not dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997).  Such motions are viewed with disfavor and rarely granted.  *Id.*

**III.    Analysis**

**A.      Title VII Claims: Race Discrimination and Sex Discrimination**

**1.      Employer Liability**

The IHOP Entities argue that they cannot be held liable with respect to the Plaintiffs' race discrimination claims, because they were not the Plaintiffs' employer.  Thus, the IHOP Entities assert that the Plaintiffs fail to state a claim against them.  Accordingly, they urge the Court to dismiss the Complaint on this ground.

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., prohibits any employer, employment agency, or labor organization from engaging in unlawful employment practices based upon an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e. For the purposes of Title VII "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year from the date of the alleged discriminatory act, and any agent of such a person." 42 U.S.C. § 2000e et seq.; *see also Vera-Lozano v. Int'l*

*Broadcasting*, 50 F.3d 67 (1st Cir. 1995).

Select courts that have found a franchisor to be an employer under Title VII. *Freeman v. Suddle Enters., Inc.*, 179 F.Supp.2d 1351, 1356 (M.D. Ala. 2001). Generally, these courts have reached this conclusion only after determining that the franchisor required the franchisee to adopt specific employment policies. *Id.* When deciding whether a franchisor's actions give rise to a legal duty, courts distinguish between "*recommendations* and *requirements*." *See, e.g.*, *Wu v. Dunkin' Donuts, Inc.,* 105 F.Supp.2d 83, 87-90 (E.D.N.Y. 2000) (chronicling nationwide cases addressing franchisor liability and noting this distinction) (emphasis in original); *See also Freeman*, 179 F.Supp.2d at 1356. Moreover, where a franchisor requires its franchisee to hire, train, and supervise employees in accordance with extensive guidelines and reserves the right to impose discipline upon employees engaging in discriminatory acts, certain courts have found an agency relationship. *See, e.g.*, *Miller v. D.F. Zee's, Inc.*, 31 F.Supp.2d 792, 806-07 (D. Or. 1998).

In the subject case, the IHOP Entities argue that they are not the Plaintiffs' employer. In support of their contention, they produced the Declaration of Kamal Sbih, who attests that the Plaintiffs were employed by J&K, and not by the IHOP Entities. (R. Doc. 62-2, Decl. of Kamal Sbih). In the Declaration, Mr. Sbih states that J&K was the employer of all individuals working at the Covington IHOP restaurant and that J&K operated the restaurant pursuant to the franchise agreement with International House of Pancakes, Inc. Sbih also indicates that J&K did not share any employees, officers, directors, equipment, or space with any of the IHOP Entities and that J&K made all personnel decisions. He also avers that the IHOP Entities did not direct the work schedules and/or the work performance of Matthews or McGee and did not pay them for their work or provide them with employment benefits or worker's compensation.

Neither Matthews nor McGee filed any evidence contradicting the Sbih's Declaration. Therefore, the Court is compelled to conclude that the facts viewed in the light most favorable to Plaintiffs fall short of raising a genuine issue of materiality with respect to a finding that the IHOP Entities employed the Plaintiffs.

### 2.    Single Employer

The IHOP Entities also note that, in the Complaint, Matthews and McGee allege that the IHOP Entities and J&K constitute a "single business enterprise" for the purpose of their race discrimination claim. However, according to the IHOP Entities, this argument fails as well, because the Plaintiffs failed to name the IHOP Entities in their EEOC charges. They contend that they may not be sued unless there is a clear identity of interests between the IHOP Entities and the party named in the charge. The IHOP Entities insist that there is no such relationship here.

Under the single employer test, also known as the integrated enterprise test, courts consider the interrelation of operations; centralized control of labor relations; common management; and common ownership or financial control. *Spaulding v. NW Hospitality Inv. Co., L.L.C.*, 209 F.Supp.2d 1149, 1152 (D. Kan. 2002) (citing *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1069 (10th Cir. 1998). *See also Trevino v. Celanese, Corp*, 701 F.2d 397 (5th Cir. 1983). A principal requirement of the single employer test is "'that there be sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer.'" *Spaulding*, 209 F.Supp.2d at 1152 (quoting *Lockard*, 162 F.3d at 1062).

Courts adopting the single-employer test have emphasized that a "broad interpretation should

10

be given to the employer and employee provisions of Title VII to effect its remedial purpose."[3] *Id.*

(citing *Lockard,* 162 F.3d at 1069). Accordingly, the single-employer test is the approach most

urged by plaintiffs in Title VII actions. *Id.*

For example, in *Trevino v. Celanese Corp.,* the Fifth Circuit iterated a "single employer"

test to determine when two private entities should be aggregated for the purposes of deciding

whether the entities constitute a single employer under Title VII. 701 F.2d 397. *See also Garrett-*

*Woodberry v. Mississippi Bd. of Pharmacy*, No. 08-60372, 2008 WL 4963218, at *1 (5th Cir. 2008)

(per curiam) (discussing *Trevino*). The Court employed a four-factor test to decide whether two

entities should be aggregated as one employer, namely: (1) interrelation of operations; (2)

centralized control of labor relations; (3) common management; and (4) common ownership or

financial control. *Trevino*, 701 F.2d at 404. *See also Garrett-Woodberry*, 2008 WL 4963218, at *1.

Of the four factors, the Court deemed the second factor of this inquiry as the most important. *Id.*

Here, Sbih declares that J&K and the IHOP entities never shared employees, officers,

directors, equipment, or space. (R. Doc. 62-2, Decl. of Kamal Sbih). He further declares that J&K

and the IHOP entities maintain separate bank accounts, books, accounting records, payroll accounts,

personnel records, and tax identification numbers. Furthermore, Sbih states that the IHOP entities

did not direct Matthews's or McGee's work. Finally, Sbih indicates that J&K has always been

solely responsible for the day-to day operations of the restaurant and that none of the IHOP entities

ever had any day-to-day authority or control over the management or personnel at the Covington

Restaurant. Based on the foregoing, the Court concludes that Matthews and McGee have not

---

[3] The single employer tests contrasts with the "stringent" common law approach, which "tends to exclude the greatest number of persons from Title VII coverage." *Spaulding*, 209 F.Supp.2d at 1152.

presented any proof that the IHOP Entities meet the statutory definition of employer for the purposes

of this litigation.[4]

### 3. **Exhaustion of Administrative Remedies**

The IHOP Entities also argue that, in addition to the inherent problems associated with

McGee's race discrimination claim, she failed to exhaust her administrative remedies with respect

to her sex discrimination claim as well and is therefore precluded from asserting that claim in this

case. They specifically complain that McGee did not mark the box for discrimination based on

"sex"on the EEOC Charge of Discrimination form. According to the IHOP Entities, McGee's claim

was not considered at the administrative level and, as such, she failed to exhaust her available

administrative remedies. Thus, the IHOP Entities urge the Court to dismiss McGee's sex

discrimination claim.

McGee contends that, contrary to the representation of the IHOP Entities, her Charge of

Discrimination contains statements indicating that she was a victim of sex discrimination. She notes

that she specifically alleged in her EEOC Charge Questionnaire that she was sexually discriminated

against based upon her sex. She therefore suggests that including the reference in the Questionnaire

is sufficient to put the IHOP Entities on notice of her claim, even though she did not check of the

box for sex discrimination in the EEOC Charge Form.

Before seeking judicial relief, an employee must exhaust her administrative remedies by

filing a charge of discrimination with the Equal Employment Opportunity ("EEO") division of her

---

[4]The Court notes that, with respect to the race discrimination claims, the IHOP Entities seemingly intertwined their single employer argument with their failure to exhaust administrative remedies argument. However, these arguments are distinct. Having determined that the IHOP Entities do not meet the statutory definition of an employer, the Court determines that it is unnecessary to consider the IHOP Entities' exhaustion argument, only as it relates to the allegations of race discrimination.

agency. *Patton v. Gonzales*, 197 Fed.Appx. 309, 312 (5th Cir. 2006) (citing *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006)).  Furthermore, federal regulations require an employee who believes he or she has been discriminated against to consult with an EEO counselor within 45 days of the date of the alleged discriminatory personnel action.  *Id.* (citing 29 C.F.R. § 1614.105(a)(1); *Ramsey v. Henderson,* 286 F.3d 264, 269 (5th Cir. 2002)).

Section 2000e-5(b) expressly provides that "charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires." *Evenson v. Sprint/United Mgmt. Co.*, No. 3:08-CV-0759-D, 2008 WL 4107524, at *4 (N.D. Tex. Aug. 21, 2008).  The EEOC's regulations concerning Title VII charges also require verification.[5] *Id.* (citing 29 C.F.R. § 1601.9 (2007)).  With regard to the contents of a Title VII charge, the applicable regulation provides:

Each charge should contain the following:

(1) The full name, address and telephone number of the person making the charge except as provided in § 1601.7;

(2) The full name and address of the person against whom the charge is made, if known (hereinafter referred to as the respondent);

(3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices: See § 1601.15(b);

(4) If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be; and

(5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such

---

[5]  "Verified" means "sworn to or affirmed before a notary public, designated representative of the EEOC, or other person duly authorized by law to administer oaths and take acknowledgments or supported by an unsworn declaration in writing under penalty of perjury." *Evenson*, 2008 WL 4107524, at *4 (citing 29 C.F.R. § 1601.3 (2007)).

commencement and the name of the agency.

*Id.* (quoting 29 C.F.R. § 1601.12(a) (2007)).

However, a filing that omits some of the requisite § 1601.12(a) information may still constitute a charge, where the person making the charge submits a precise written statement to the EEOC which sufficiently identifies the parties and generally describes the action or practices complained of." *See Id.* (citing 29 C.F.R. § 1601.12(b)).

Here, McGee signed the Charge Questionnaire under penalty of perjury, so it was "verified." *See Id.,* at \*5. This filing meets the requirements of § 1601.12(a). Thus, McGee's Charge Questionnaire satisfies all of the regulations' requirements for a charge, in that it is verified and it contains all of the information enumerated in § 1601.12(a).

Yet, while McGee has satisfied the EEOC's minimum regulatory criteria such that her submission constitutes a charge of employment discrimination, the Court's analysis does not end here. *See Id.* The Fifth Circuit has treated a plaintiff's unverified, EEOC intake questionnaire as a Title VII charge of discrimination for the purpose of satisfying the time limitation for filing a charge. *Id.* (citing *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 76, 78 (5th Cir. 1982)).[6] However, notice to the employer and EEOC administrative action are required *before* an intake questionnaire will suffice as a formal charge. *Harris v. David McDavid Honda*, 213 Fed.Appx. 258, 262 (5th Cir. 2006) (per curiam) (emphasis added). *See also Evenson*, 2008 WL 4107524, at \*5 (concluding that plaintiff's Charge Questionnaire did not constitute a charge of discrimination under Title VII).

---

[6] For example, in *Price v. Southwestern Bell Telephone Co.*, the Court concluded that the employer's receipt of notice of the intake questionnaire's allegations "fulfilled the congressional purpose for imposing a filing limitation, the provision of prompt notice to the employer[.]"687 F.2d 74, 79 (noting that plaintiff's intake questionnaire satisfied minimum requirements of § 1601.12(b) and observing that EEOC initially treated plaintiff's intake questionnaire as a charge by initiating the administrative process). *See also Evenson*, 2008 WL 4107524, at \*5.

In the opinion of the Court, *Price* and *Harris* are instructive. The record shows that McGee

filed her Charge Questionnaire on November 6, 2005. In the Questionnaire, she states that she was

"sexually discriminated against." Nonetheless, she filed her Charges of Discrimination with the

Louisiana Commission on Human Rights on June 29, 2006, and August 9, 2006, respectively. (R.

Doc. 62-3, Exs. B and C). McGee selected the box for "race" in the section which requested

information on the type of discrimination claim she was submitting. She did not, however, indicate

that she was asserting a claim based upon sex. In fact, the Court notes that the section of the charge

form in which McGee describes her experience, she only reports that she was: (1) physically

assaulted; (2) subjected to a racial slur when the General Manager referred to her co-worker as a

monkey; and (3) forced to resign, because she had to take care of a personal emergency. She further

indicates that, even though her employer did not give her any reasons for these actions, she believes

that she was discriminated against based upon race.

Here, McGee's EEOC Charge Questionnaire does not constitute a charge of discrimination,

because there is no evidence that the IHOP Entities had notice of the contents of the filings or that

the EEOC treated the allegations as a charge by initiating administrative proceedings. Therefore,

because McGee's Charge Questionnaire does not constitute a charge of discrimination and because

she failed to exhaust the available administrative remedies, the Court finds that McGee fails to state

a claim of sex discrimination.

> **B.**      **42 U.S.C. §1985**

The IHOP Entities also contend that, while the Plaintiffs alleged that there was a conspiracy

pursuant to 42. U.S.C. § 1985, this claim also fails because it is conclusory and fails to meet the

statutory requirements to adequately state such a claim. To properly state a claim under § 1985(3),

a plaintiff must allege a conspiracy involving two or more persons. *Hillard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994). At a minimum, a claim under § 1985 must allege a factual basis for the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).

"The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Kush v. Rutledge*, 460 U.S. 719, 726 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). "Mere conclusory allegations of deprivations of constitutional rights are insufficient to state a § 1985(3) claim." *D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992).

In the Complaint, the Plaintiffs allege that the IHOP Entities, individually and through their officers, agents and employees, conspired and acted on said conspiracy to impair their rights and the rights other similarly situated African American citizens to make and enforce contracts, particularly employment, based upon race. ( R. Doc. 1). The Court notes that, while the Plaintiffs contend that there was a conspiracy, they fail to allege that there was agreement between the alleged conspirators. *See Mack v. Envtl. Restoration, LLC*, No. 07-1268, 2007 WL 3071593 (E.D. La. Oct. 19, 2007) (Africk, J.). They also fail to allege the nature of the conspiracy. The Court therefore finds that the claimants fail to state a claim for conspiracy pursuant to 42 U.S.C. § 1985.

C.      **42 U.S.C. § 1981**

The IHOP Entities also seek dismissal of Matthews race discrimination claim under 42 U.S.C. § 1981, arguing that racial slurs in the workplace are not sufficient evidence of discrimination

unless they are made in proximity to the adverse employment action. They contend that there is no such evidence of the temporal relationship between the word and actions. Therefore, they insist that the Plaintiffs' § 1981 claims should be dismissed.

Matthews contends that the IHOP Entities do not deny that Mohamed uttered the stream of racial epithets attributed to him, but instead characterized them as stray remarks. He contends that there is no question that the statements are related to his class, temporally related to the employment decision, and made by an individual with authority.

Claims of race-based discrimination brought under Section 1981are governed by the framework applied to claims of employment discrimination brought under Title VII. *Thomas v. Corpus Christi Indep. Sch. Dist.*, No. V-07-68, 2008 WL 5273608, at *8 (S.D. Tex. Dec. 16, 2008). (citing *Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir.1997)) (internal citations omitted). That is to say, the plaintiff must show: (1) membership in a protected class; (2) employer's intent to discriminate on the basis of race; and (3) discrimination concerning the "making and enforcing of a contract." *Id.* To satisfy ordinary principles of proof in discrimination cases, a plaintiff must provide direct evidence of a purpose to discriminate or circumstantial evidence of sufficiently probative force to raise a genuine issue of material fact. *Hill v. Leavitt*, No. 1:05CV00582, 2007 WL 2815742, at *3 (M.D.N.C. Sept. 24, 2007) (citing *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988).

Because it is often difficult for a plaintiff to provide direct evidence of discriminatory intent, the Supreme Court has created a burden-shifting structure for analyzing such claims, *i.e.*, the *McDonnell Douglas* framework. *Id.* (citing *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must plead facts sufficient to create an inference that an adverse

17

employment decision was based on impermissible considerations. *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). Specifically, the plaintiff must demonstrate that: (1) he or she is a member of a protected class; (2) he or she was otherwise qualified for the position; (3) he or she suffered an adverse employment action; and (4) the action took place under conditions establishing an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802

The Matthews's Affidavit indicates that Mohamed called him "racial names," including monkey. (R. Doc. 76-10, Ex. 7, Aff. of Bobby O. Matthews, Jr., Jan. 24, 2007). According to Matthews, Mohamed also told him "you all guys can climb fast like a monkey." In his Charge Questionnaire, Matthews indicates that Mohamed commented to him " ya'll colors are like flies, you're always in some shit." (R. Doc. 76-8, Ex. 5, Charge Questionnaire of Bobby O. Matthews, July 20, 2005). Matthews also averred that Mohamed said "ya'll need to go back where you came from" and "the Bogalusa Mill must do something to all the blacks, cause they all act the same." (R. Doc. 76-8, Ex. 5, Charge Questionnaire of Bobby O. Matthews, July 20, 2005).

The present challenge is that the Plaintiffs' argument as presented presumes that Mohamed's employer was sued. However, as determined earlier in this opinion, the IHOP Entities are the only named Defendants and they were not Matthews's employer. Rather, J&K was Matthews's employer. Furthermore, Mohamed, was the manager of J&K's IHOP Restaurant, and he was not employed by any of the IHOP Entities, as the Plaintiffs allege. While J&K was named in the original Complaint, the claims against it were dismissed on January 23, 2008. (R. Doc. 50). Therefore, the Plaintiffs' allegations are insufficient to establish a claim for racial discrimination under § 1981, because the IHOP Entities were not Matthews's employer. Furthermore, nothing before the Court gives rise to a genuine issue of material fact regarding whether the IHOP Entities

18

*intentionally discriminated* against Matthews on the basis of his race. Accordingly, the Court grants the motion to dismiss as to the § 1981 claim.

E. **Timeliness of Claims**

In their additional Motion for Summary Judgment, the IHOP Entities seek dismissal of the Plaintiffs' claims under §1985 on limitations grounds. They also seek dismissal of Matthews claim of race discrimination on limitations grounds. Further, they seek dismissal of McGee's claims of race discrimination, because: (1) the Complaint does not allege a race discrimination claim for McGee; and (2) she failed to file suit based on the race charge contained in the EEOC Charge of Discrimination Form within 90 days of receiving the notice of her right to sue.

The Court notes that each of these additional bases for dismissal are moot in light of the ruling herein, *i.e.*, the lawsuit was not filed against the Plaintiffs' employer. Therefore, whether the claims were timely filed against the wrong party is irrelevant and these allegations do not require consideration by this Court.

IV. **Conclusion**

Accordingly,

**IT IS ORDERED** that the **Motion to Dismiss, or Alternatively Motion for Summary Judgment (R. Doc. 62)** filed by International House of Pancakes, Inc., IHOP Franchising, LLC, IHOP Realty Corp., and IHOP Properties, LLC is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the **Motion for Judgment on the Pleadings or Alternatively for Summary Judgment or Partial Summary Judgment (R. Doc. 76)** is **GRANTED IN PART** and **DENIED AS MOOT IN PART**.

- **IT IS GRANTED** to the extent that McGee's sexual discrimination claim is barred, as it is outside of the scope of her EEOC Charge of Discrimination.

•	**IT IS DENIED AS MOOT** regarding all other contentions contained therein for the reasons assigned in this opinion.

New Orleans, Louisiana, this 23rd day of January 2009

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**